**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GORDON LAWRIE, et al.,

        Plaintiffs,

vs.                                      Case No. 3:09-cv-446-J-32JBT

THE GINN COMPANIES, LLC, et al.,

        Defendants.

**ORDER**

Nineteen Plaintiffs, purchasers of high end residential lots, bring this proposed class action to redress what they say is "one of the largest real estate and mortgage frauds in recent history." The Defendants, including the developer, the lenders, and others, all have moved to dismiss the First Amended Complaint as both technically and substantively flawed. Thus, this case is before the Court on Defendants' Motions to Dismiss (Docs. 84, 85, 86, 88, 89, 90).[1] Plaintiffs have filed memoranda in opposition to each motion (Docs. 98, 99, 100, 101, 102, 103), and Defendants have filed corresponding replies (Docs. 115, 116, 117, 118, 119, 120). The issues presented are therefore fully briefed and ripe for resolution.

---

[1] The First Amended Complaint (Doc. 71, "FAC") names eleven defendants, each of which has filed a Motion to Dismiss either individually or collectively: SunTrust Mortgage, Inc. (SunTrust), (Doc. 84); The Ginn Companies, LLC, Ginn Development Company, LLC, Ginn Real Estate Company, LLC, Ginn Financial Services, LLC, and Ginn Title Services, LLC (collectively, Ginn, the Ginn Entities or the Ginn Defendants), (Doc. 85); defendant ESI Living, LLC (ESI), (Doc. 86); Wachovia Bank, N.A. (Wachovia), (Doc. 88); defendant Lubert-Adler Partners, L.P. (Lubert-Adler), (Doc. 89); and Fifth Third Bancorp and Fifth Third Bank (together, Fifth Third), (Doc. 90). Defendant ESI has also filed a Motion for Summary Judgment (Doc. 109).

## I.   BACKGROUND

From 2002 through 2007, the nineteen named Plaintiffs purchased a total of forty-seven properties in eleven residential communities[2] jointly developed by "the Ginn and Lubert-Adler Defendants."[3] FAC ¶¶ 393, 395-97, 399-400, 402-04, 407, 410-14, 416, 421,

---

[2]   Plaintiffs purchased properties in the following eleven developments: (1) Bella Collina; (2) Reunion; (3) Yacht Harbor Village; (4) Tesoro; (5) Tesoro Preserve; (6) Harbor Village Condominiums; (7) Cobblestone Park; (8) Laurelmor; (9) Conservatory at Hammock Beach; (10) Quail West; and (11) BriarRose.  With the exception of Laurelmor (North Carolina), BriarRose (Georgia), and Cobblestone Park (South Carolina), each development is located in Florida.

[3]   As pertaining to the Ginn Defendants, the allegations in the FAC are at times difficult to decipher.  For example, Plaintiffs refer indiscriminately at times to "Ginn"; "the Ginn Defendants"; "Ginn salespeople"; "Ginn employees"; "Ginn developments"; and "Ginn properties."  Most of these terms are not defined, and where they are defined, they appear to be used inconsistently. For example,  paragraph 35 of the FAC defines defendants The Ginn Companies and Ginn Development Company collectively as "Ginn."  FAC ¶ 35.  That same paragraph also identifies ten affiliate or subsidiary companies controlled by "Ginn" (as defined) and defendant Lubert-Adler (to wit, "Ginn-LA, LLC; Ginn-LA Pine Island, Ltd., LLLP; Ginn-LA Orlando Ltd., LLLP; Ginn-LA Hammock Beach, Ltd., LLLP; Ginn-LA Wilderness, LLC; Ginn-LA Naples, LLC; Ginn-LA Hutchinson Island, LLC; Ginn BriarRose Holding, GP, LLC; Ginn LA-BriarRose Holdings, Ltd., LLLP; and Ginn-LA Hamlet, LLC").  Id.  The very next paragraph states: "The Ginn Companies, Ginn Development *and their affiliates and subsidiaries are hereinafter collectively referred to as 'Ginn.'  Each reference to 'Ginn' constitutes a reference to each such Defendant."* Id. ¶ 35 (emphasis added).  Therefore, the moniker "Ginn" either refers to the Ginn Companies and Ginn Development, or each and every entity ultimately controlled by these defendants, apparently depending upon the context.
       The Court will, by necessity, often refer collectively to the various Ginn Defendants as either the "Ginn Entities" or "Ginn."  As for the identity of the specific developer of the residential developments at issue in this case, the Court defers to Plaintiffs' response to the Ginn Entities' Motion to Dismiss: "'Ginn' - through the parent The Ginn Compan[ies, LLC], Ginn Development and/or one of the affiliated entities operating under the Ginn banner - developed the properties in the Ginn/Lubert Adler Communities [undefined] with Lubert-Adler. . . Plaintiffs refer to 'Ginn' *en masse*, because they have no alternative given that the Ginn entities make little effort to distinguish themselves. . . The facts alleged in the FAC[ ] support the logical conclusion that there is a Ginn, which encompasses the Ginn Empire, with a structure and hierarchy such that the parts and components are inseparable **and** that

423-25, 428, 430, 434, 436-40, 442-43, 451-52, 459, 465, 468, 474, 480-83.  Plaintiffs contend that Defendants, along with of a host of unnamed co-conspirators, orchestrated a scheme "to market, sell, and finance real estate" in these and other residential communities developed by Ginn and Lubert-Adler "at prices that were fraudulently inflated" so as to increase Defendants' profits at Plaintiffs' expense.  Id. ¶¶ 2, 47.  This scheme allegedly encompassed the entire real estate purchase process - "from the introduction of the property at lavish 'launches' and presales deceptively promoted with standardized marketing materials through the mails and wires, to the intentional manipulation of property values through misrepresentations, fraud, deception, omissions and unconscionable conduct, to the funding of mortgage loans for the properties, based upon materially false, artificially-inflated and purposefully manipulated appraisals."  Id. ¶ 4.

Plaintiffs allege that the scheme began in 1998 with the Hammock Beach development in Palm Coast, Florida, and ultimately touched nineteen different developments.[4]  Id. ¶ 48.  The first "phase" involved "creating frenzied demand through a standardized marketing approach" which "falsely touted the high value and high demand for the properties in the subject Ginn developments" and made promises of features and

---

Ginn chose to present itself as one."  (Doc. 99 at 3, 12, 14)(emphasis in original).

[4] In addition to Hammock Beach and those listed supra, n.2, Plaintiffs identify the following seven developments as having been subject to Defendants' alleged scheme: Burke Mountain in East Burke, Vermont; Ginn Sur Mer in the Bahamas; Mahogany Run in the Virgin Islands; Tesoro Beach Club in Port St. Lucie, Florida; and Hammock Beach Club Villas, Hammock Beach Club, and The Towers at Hammock Beach Club in Palm Coast, Florida.  Id.  None of the named Plaintiffs are alleged to have purchased property in either Hammock Beach or the additional seven developments.

3

amenities which were ultimately never built.[5]  Id. ¶¶ 51-53.  Plaintiffs allege that Defendants further perpetuated misrepresentations of value and demand through, inter alia, a series of fraudulent or improper appraisals, false property transfers, straw purchases, deceptive public record recordings,[6] and fraudulent property transfers at artificially high prices.  See id. ¶¶ 93-153.  To close the circle, defendants Wachovia, Fifth Third, SunTrust, and Ginn Financial Services (collectively, the Lender Defendants) are alleged to have "actively influenced and participated in the fraudulent scheme" by extending financing based upon "bank-ordered fraudulent appraisals" of property within the subject developments and by "receiving and giving kickbacks."  Id. ¶¶ 130, 140.  Plaintiffs allege that each of the Defendants benefitted from this complex, deceptive scheme through increased sales prices, greater business volume, loan origination fees, and other profits; meanwhile, Plaintiffs suffered substantial losses as a result of purchasing property worth a fraction of its "appraised value."  Id. ¶¶ 10, 189-192, 195, 253, 302, 339, 367, 390.

Based on these allegations, Plaintiffs filed this lawsuit on behalf of themselves and a class of purchasers of lots in the nineteen "Ginn developments" named in the FAC.  As against all Defendants, Plaintiffs assert five causes of action:  violations of the Racketeer

---

[5]  This marketing approach was allegedly developed by defendant ESI.  Id. ¶¶ 50-53.  Plaintiffs also allege that Defendants' marketing efforts often targeted foreign nationals "due to the minimal credit checks required and the ability to avoid compliance with certain disclosure and documentation requirements."  Id. ¶ 154.

[6]  Plaintiffs allege that "[a]nother tactic used by Defendants in order to fraudulently and artificially inflate selling prices for the Ginn properties was to purposefully cause to be recorded false information with respect to property sales."  Id. ¶ 93.  The majority of Plaintiffs' allegations in this regard appear to be directed at defendant Ginn Title Services, LLC.  See id. ¶¶ 95-98, 102-05, 107.

4

Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. (Counts I and II);[7] violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201, et seq. (Count III); civil conspiracy (Count IV); and unjust enrichment (Count VI). As against the Lender Defendants, Plaintiffs assert one additional claim, for negligent supervision (Count V). Each Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6).

## II.     MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), the Court must determine whether the FAC sets forth sufficient factual allegations to establish a claim upon which relief can be granted. In evaluating whether Plaintiffs have stated a claim, the Court must determine whether the FAC satisfies Rule 8(a)(2). In addition, where, as here, the complaint contains fraud-based claims, the FAC must also satisfy the heightened pleading requirements of Rule 9(b).

Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 1950 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[7] In Count I of the FAC, Plaintiffs allege that the Defendants constitute an enterprise which conducted its affairs through a pattern of racketeering activity, predicated upon acts of mail and wire fraud, in violation of 18 U.S.C. § 1962(c). FAC ¶¶ 526-28. In Count II, Plaintiffs claim that each of the Defendants conspired to violate § 1962(c), in violation of 18 U.S.C. § 1962(d). Id. ¶¶ 529-534.

misconduct alleged." Iqbal, 129 S.Ct. at 1949.  Though detailed factual allegations are not required to satisfy this standard, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009); see also Iqbal, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'")(quoting Twombly, 550 U.S. at 557).  Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Although it must accept well-pled facts as true,[8] the Court is not required to accept Plaintiffs' legal conclusions. Iqbal, 129 S.Ct. at 1949 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, the Court should make reasonable inferences in the plaintiff's favor, but is "not required to draw plaintiff's inference." Sinaltrainal, 578 F.3d at 1260 (internal citation and quotation omitted).  "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Id. (internal citation and quotation omitted); see also Iqbal, 129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be

---

[8]  In ruling on a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. Sinaltrainal, 578 F.3d at 1260.

assumed true").

In addition to satisfying the Rule 8 requirements articulated by Twombly and Iqbal, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).[9] This particularity requirement is required so as to "alert[ ] defendants to the precise misconduct with which they are charged and [to] protect[ ] defendants against spurious charges of immoral and fraudulent behavior." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006)(alterations in original, internal citation omitted). Rule 9(b) therefore requires that a complaint "allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who engaged in them." United States *ex. rel.* Cooper v. Blue Cross Blue Shield of Florida, 19 F.3d 562, 568 (11th Cir. 1994)(per curiam). More specifically, to satisfy Rule 9(b), a complaint alleging fraud-based claims must set forth the following with respect to each allegation of fraud:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and person responsible for making (or in, the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiffs; and (4) what the defendants obtained as a consequence of the fraud.

Rogers v. Nacchio, 241 Fed. App'x. 602, 608 (11th Cir. 2007)(quoting Ziemba v. Cascade

---

[9] In accordance with Rule 9(b), "[w]hen a RICO claim is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity[.]" Liquidation Comm'n of Banco Intercontinental S.A. v. Renta, 530 F.3d 1339, 1355 (11th Cir. 2008) (citing Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007)); see also Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010). Likewise, Plaintiffs' FDUTPA claims are grounded in fraud, and thus must be plead with particularity. See Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("[Plaintiff's] Amended Complaint alleges fraud in that she claims that she did not receive the cruise that was promised to her. Hence, her FDUTPA claim should be plead with particularity, and as plead [sic], is insufficient.")

Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

Where a complaint alleges fraud-based claims against multiple defendants, Rule 9(b) requires specific allegations with respect to each defendant. Ambrosia Coal, 482 F.3d at 1317; Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997). These specific allegations "should inform each defendant of the nature of his alleged participation in the fraud." Ambrosia Coal, 482 F.3d at 1317 (affirming dismissal of a RICO complaint on Rule 9(b) grounds where complaint failed to allege "the nature of each defendant's participation in the scheme," failed to identify "each alleged statement, document, or misrepresentation made with the proper level of precision," and failed to specify "the content or manner in which the statements [of misrepresentation] misled [the plaintiff]").

## III.    DISCUSSION[10]

The sheer length and confusing structure of the FAC makes it difficult to parse. The FAC is 134 pages and 566 paragraphs long and asserts six counts against eleven defendants.[11] The recitation of the various counts does not begin until page 126, paragraph 526,[12] at which point the great majority of the prolix factual background is incorporated into

---

[10] Because Defendants' motions to dismiss raise the same issues with regard to pleading deficiencies, the Court will address those issues globally.

[11] By comparison, Plaintiffs' original complaint (Doc. 1) was 60 pages and 219 paragraphs long. In the face of motions to dismiss the original complaint, Plaintiffs voluntarily filed the FAC, which is before the Court now. Thus, this is the first time the Court has been called upon to address the viability of a complaint in this case.

[12] This is inapposite to the pleading at issue in Acciard et al. v. Whitney et al., 2008 WL 5111307 (M.D. Fla. Dec. 4, 2008), which Plaintiffs cite for the proposition that the FAC is

each count without regard for the cause of action being pled.[13]  The counts themselves aver no facts, nor do they distinguish amongst the conduct of the Defendants.[14]  While the Plaintiffs are identified, see FAC ¶¶ 391-486, it is unclear in many instances how or whether

---

adequately pled.  The complaint in Acciard, which also alleged a fraudulent real estate scheme, began with 84 introductory paragraphs followed by *137 count-specific paragraphs* spread across twenty-one separate counts.  The FAC, in contrast, contains 525 introductory paragraphs followed by 41 count-specific paragraphs spread across six counts, leaving the Court with the "onerous" task of sifting through the unwieldy introduction in search of the allegations which support each cause of action against each Defendant.  See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

[13]  For example, Plaintiffs' FDUTPA, civil conspiracy, and unjust enrichment counts (Counts III, IV, and VI) are allegedly predicated upon the same 458 enumerated paragraphs, despite the disparate legal elements associated with each count.  See FAC ¶¶ 535, 543, 560 (all incorporating by reference "paragraphs 2-12, 33-37, 48-390, 391-486, 487-489").  In fact, *each and every* count of the FAC incorporates these same 458 paragraphs, though some incorporate additional paragraphs as well.  See, e.g., id. ¶ 526 (incorporating paragraphs 543-549 in addition to the 458 paragraphs listed above into Count V, which alleges negligent supervision as to the Lender Defendants).  Thus, at a minimum, each count incorporates 458 paragraphs of factual allegations; some contain slightly more.

[14]  This is especially true of the fraud-based claims. For example, Plaintiffs allege in their FDUTPA count (Count III) that "[t]he conduct of Defendants as alleged herein, including the use of misrepresentations, lies, collusions [sic], manipulations, kickbacks, omissions, mail and wire fraud, and other tactics in furtherance of an overarching scheme to artificially inflate the apparent values and demand for the properties purchased by Plaintiffs and members of the Class, is unfair, unconscionable and/or deceptive. . . [e]ach Defendant's unfair, unconscionable and/or deceptive acts contributed to the fraudulently inflated prices prevalent in Ginn Communities."  Id. ¶¶ 537-38.  This paragraph asserts in conclusory fashion that *each* defendant committed *each* of the unspecified fraudulent acts listed, and requires the Court to scour the 458 paragraphs incorporated into Count III to determine which might apply to which defendant.  For Plaintiffs to properly assert their fraud-based claims, they must be made with particularity as to each defendant.  See Brooks, 116 F.3d at 1381 (holding that Rule 9(b) prohibits plaintiffs from "simply 'lump[ing] together' [numerous defendants]' in their allegations of fraud;" see also Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)(upholding dismissal where complaint against multiple defendants was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" and instead "lump[ed] all the defendants together and [did] not specify who was involved in what activity.")

their individual situations were directly affected by the allegedly wrongful activities undertaken by the Defendants. As a result, the FAC is a variant - albeit not quintessential - "shotgun pleading."[15] See Cook v. Randolph County, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases). Due to the factual overlap of the allegations and the failure of the counts to differentiate among the Defendants, the Court finds that "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. District Bd. of Trustees of Central Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). The FAC is therefore due to be dismissed and repleaded in a more concise, coherent and orderly fashion.

However, rather than simply order repleader, the Court takes this opportunity to address certain other concerns it has with the structure and content of the FAC to give Plaintiffs their best opportunity to plead a viable complaint.

### A.     Conclusory Allegations, Prolix Pleading, and Improper Lumping

Defendants assert that the great majority of Plaintiffs' allegations are conclusory and impermissibly lump the Defendants together.  Plaintiffs contend that such an argument

---

[15] A true shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, 305 F.3d at 1295. Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted. See id. The FAC falls just short of being considered a true shotgun pleading because each count does not reallege the "facts" of the preceding counts. However, this distinction is immaterial because the counts themselves contain no facts; rather, the "irrelevant factual allegations" through which this Court must sift are located within the 458-plus paragraphs incorporated into each count.

ignores the "structure and substance of the FAC[ ], which organizes the allegations in a manner that notifies each Defendant of the charges against it and presents them in a cogent, logical progression." Doc. 99 at 10. This "structure and substance" consists of alleging "generalized conduct which applies equally to all the Defendants," which generalized conduct is then funneled down to defendant-specific allegations "as the FAC[ ] reaches a crescendo. . . ." Id. Thus, Plaintiffs assert that by following the structure of the FAC, each defendant is put on notice of both the overall scheme and how its specific actions contributed to it.[16]

However, allegations of "generalized conduct" against multiple defendants are only proper if the complaint also alleges facts which evoke more than "the mere possibility" that each individual defendant acted unlawfully, something the FAC consistently fails to do. Instead, the FAC often follows its general allegations of the "fraudulent scheme" with specific allegations that a particular defendant engaged in conduct which appears to be, at best,

---

[16] Despite this assertion, the Court notes that Plaintiffs fail to make specific allegations against each Lender Defendant in their claim for negligent supervision (Count V). To state a cause of action for negligent supervision under Florida law, a plaintiff must allege: (1) the existence of a duty to protect the plaintiff from the injury or damage of which he complains; (2) failure of the defendant to perform that duty; and (3) injury or damage to the plaintiff proximately caused by such failure. Albra v. City of Ft. Lauderdale, 232 Fed. App'x. 885, 888 (11th Cir. 2007) (citing Roberson v. Duval County Sch. Bd., 618 So. 2d 360, 362 (Fla. 1st DCA 1993)). Negligent supervision occurs when, "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness and the employer fails to take further action such as investigation, discharge, or assignment." Smith v. America Online, Inc., 499 F. Supp. 2d 1251, 1267 (M.D. Fla. 2007). Rather than individualizing the conduct, Plaintiffs simply incorporate their allegations relating to civil conspiracy, then allege in conclusory fashion that "[e]ach of the Lender Defendants had notice that its executives, loan officers, agents and/or employees were involved in conduct that made them unfit to perform their duties," and "were aware, or should have been aware" of their conduct "[b]y virtue of the very nature of the conduct alleged, as well as[ ] the rapid , numerous, and substantial value of the mortgage loans for Ginn properties generated by the conduct alleged." FAC ¶¶ 555-56.

11

"merely consistent with" that defendant's liability.  For example, Plaintiffs allege that "[e]ach of the Lender Defendants provided financing for numerous properties within the Ginn developments, based on fraudulent appraisals and artificially-high property values."  FAC ¶ 146.  Later, as against Ginn Financial, Plaintiffs allege the following:[17]

> 343. Ginn Financial arranged mortgage loans based on fraudulent appraisals for many Ginn properties, including properties in Bella Collina, Yacht Harbor Village and Quail West.
>
> 344. For example, on or about January 20, 2006, foreign national Paul Diggens purchased Lot 313 [subdivision unknown] for $930,000, through a partnership known as Marlborough, LLC, financed with a $507,500 mortgage from Ginn Financial.  On or about February 9, 2006, Diggens purchased Lot 1, Quail West for $620,900, through a partnership known as Greenwich Isles, LLC, financed with a $496,720 mortgage from Ginn Financial.
>
> 345. Contact persons for Ginn Financial included Megan Wood, Matt Steinhour and Bill McCracken.

FAC ¶ 343-45.  The FAC is replete with these types of specific factual allegations, which Plaintiffs assert provide the "factual enhancement"[18] and "framework" for the alleged

---

[17] The Court chose this particular example because it is the same one used by Plaintiffs to support their contention that the FAC is not rife with "legal conclusions" or "conclusory allegations masquerading as facts."  See Doc. 99 at 14-15.

[18] Plaintiffs acknowledge that their allegations "tread a fine line between overburdening the FAC[] with discrete facts and meeting the particularity requirements imposed by Rule 9(b)."  Doc. 99 at 14.  However, plaintiffs are reminded that Rule 9(b)'s particularity requirement does not mandate unwieldy, prolix complaints; rather, it requires that the *elements of fraud* be pled specifically as against each defendant.  The fraudulent scheme alleged by Plaintiffs is certainly complex, and some length is to be expected, but the FAC is so heavy on "framework" and short on demonstrative examples of fraud as to be unsustainable. See, e.g., Hendley v. Am. Nat'l Fire Ins. Co., 842 F.2d 267, 269 (11th Cir. 1988)(holding that Rule 9(b) was not satisfied where plaintiff "never earmarked any facts as demonstrative of fraud.")  This is not to say that the FAC contains no well-pled allegations of fraud, only that they are awash in a sea of conclusory allegations and unnecessary factual enhancement.

fraudulent scheme and thereby "demonstrat[e] the plausibility of the claims alleged" against Defendants.  Doc. 99 at 14-15.  The problem with this logic is that the allegation which provides the foundation for this "framework" - i.e., for purposes of this example, that "[e]ach of the Lender Defendants provided financing for numerous properties within the Ginn developments, based on fraudulent appraisals and artificially-high property values" - is entirely conclusory.[19]  Therefore, the "substance and structure" of the FAC improperly requires the Court to draw legal conclusions (i.e., that Defendants' actions, which in many cases are not objectively improper, uniformly constitute misconduct) from conclusory allegations (i.e., that the Defendants purposefully orchestrated an elaborate scheme to defraud Plaintiffs via artificial inflation of property values).  See Iqbal, 129 S.Ct. at 1949 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); Sinaltrainal, 578 F.3d at 1260 ("unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.")[20]

---

[19]  Continuing to utilize paragraphs 343-45 of the FAC as an example, Plaintiffs have improperly bridged a conclusory allegation (Ginn Financial provided financing utilizing fraudulent appraisals) with specific allegations of otherwise proper conduct (Ginn Financial financed three lots with loans well below their appraised values). The FAC lacks specific facts to support its conclusory allegations that (a) at the time of each purchase, the market value of the property was in fact materially less than the appraised value, and (b) that any of the Defendants were aware of that fact.

[20]  The same circular reasoning dooms Plaintiffs' civil conspiracy and RICO conspiracy claims (Counts II and IV), as the FAC contains no fact-specific allegations of an agreement between any of the Defendants to defraud the Plaintiffs.  Instead, Plaintiffs contend that the Court can infer such an agreement from the conduct of the alleged participants. Doc. 99 at 28.  However, Plaintiffs do not explain how an agreement to defraud can be inferred when the conduct alleged is not overtly fraudulent.  Agreement cannot be inferred from the scheme

### B. RICO Pleading Deficiencies

#### *1. Lack of Specificity Regarding Predicate Acts*

As to Plaintiffs's RICO counts (Counts I and II), the FAC falls short of the principle that a complaint must "inform each defendant of the nature of his alleged participation in the fraud." Ambrosia Coal, 482 F.3d at 1317. To properly plead a RICO claim under § 1962(c), as Plaintiffs assert in Count I, a plaintiff must plead facts supporting the following elements: "(1) conduct; (2) of a RICO enterprise; (3) through a pattern; (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). To support the pattern element, a plaintiff must plead facts to support the following sub-elements: (1) commission of two or more predicate acts of racketeering activity within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. Jackson v. BellSouth Telecom., Inc., 372 F.3d 1250, 1264 (11th Cir. 2004); 18 U.S.C. § 1961(5). "Racketeering activity" means the violation of any of the criminal statutes set forth in § 1961(1)(B), which include the statutes criminalizing mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).[21] These elements must be pled

---

if the scheme cannot be inferred from the conduct.

[21] "Mail fraud. . . occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.' [18 U.S.C.] § 1341. The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S.Ct. 2131, 2138 (2008)(internal quotation omitted). Similarly, wire fraud requires a showing of "(1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003).

with particularity under Rule 9(b) as against each defendant. See Ambrosia Coal, 482 F.3d at 1317.

Section XIII of the FAC, entitled "RICO Allegations," contains a subsection for "Predicate Acts Mail and Wire Fraud: 18 U.S.C. § 1341 and 8 [sic] U.S.C. § 1343." FAC ¶¶ 504-511.  Within that subsection, Plaintiffs allege that "Defendants have engaged and continue to engage in conduct violating" the mail and wire fraud statutes "and continue to engage in conduct violating each of these laws to effectuate their scheme. See, e.g., paragraph numbers, *including but not limited to* 53, 74-79, 81-84, 86-91, 124-27, 139, 148-49, 150, 163, 168, 214-19, 222, 222 [sic]-223; 233, 235, 237, 244, 247, 263-66, 274, 276, 278, 280, 283, 317, 321, 337, 361, 397, 413, 437, 444, 451, 457, 466, and 472." Id. ¶ 504 (emphasis added).  Thus, Plaintiffs are representing that any or all of these paragraphs - and more - set forth the necessary predicate acts of wire and mail fraud to support their allegations of racketeering activity as to each defendant.  However, a cursory review of the enumerated paragraphs shows no mention of defendants ESI, Ginn Title, Ginn Financial Services, Ginn Development Company, Ginn Real Estate Company, or The Ginn Companies.[22]  Defendant Lubert-Adler is mentioned tangentially in one paragraph.  See id.

---

[22]   None of the 61 paragraphs which Plaintiffs contend constitute predicate acts of wire and mail fraud actually reference a specific Ginn entity by name; instead, the twenty paragraphs which mention "Ginn" identify the actor as either "Ginn" or a "Ginn salesperson" and provide no further detail as to the specific Ginn entity the actor represents. See id. ¶¶ 53, 81-84, 86-91, 168, 219, 337, 361, 397, 413, 444, 451, 472.  Plaintiffs acknowledge their failure to differentiate among the various Ginn Entities, but contend that such failure is excusable because "the information required to completely disaggregate the Ginn Entities is peculiarly within the hands of the Defendants themselves." Doc. 99 at 13; see United States ex rel. Doe v. Dow Chem. Co., 343 F.3d 325, 330 (5th Cir. 2003)(providing for "possible" relaxation of Rule 9(b)'s pleading requirements in such situations).  Even if this

¶ 361. Defendant Wachovia is mentioned in two paragraphs, the first of which (¶ 317) falls short of the specificity required by Rule 9(b),[23] and the second of which is the FAC's most egregious example of irrelevant "factual enhancement" masquerading as fraudulent conduct:

> Indicative of the close relationship [between "Ginn" and Wachovia], at 10:27 AM on July 26, 2007, Jason Lough, mortgage consultant with Wachovia Mortgage Corp., sent an email to Ginn employee Kelly Headley, Contract Coordinator in Tesoro, with the heading, "How is my favorite Tesoro person???"

Id. ¶ 321. An allegation of facially innocent conduct such as this is simply insufficient to put a defendant such as Wachovia on notice of their alleged participation in the fraudulent scheme. Moreover, paragraph 504's scattershot incorporation of 61-plus paragraphs, some of which contain "allegations" such as the one in paragraph 321, inappropriately lumps together the Defendants and fails to properly identify the predicate acts upon which Plaintiffs'

---

were definitively the law of the Eleventh Circuit, see Barys ex rel. United States v. Vitas Healthcare Corp., 298 Fed. App'x. 893, 897 (11th Cir. 2008)("accepting. . . as true" that Rule 9(b)'s pleading requirements can be relaxed without adopting the position), conclusory statements like those upon which the FAC is based are insufficient to justify a relaxed pleading standard for fraud-based claims. See U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002)(noting that a more lenient pleading standard cannot be used to base claims of fraud on conclusory allegations).

[23] Paragraph 317 reads: "While he was with Wachovia, loan officer Roy Snoeblen would often, by telephone and email, contact [plaintiffs] Petts and Button in the United Kingdom, seeking to encourage them to purchase Ginn properties and/or to refinance their existing mortgages for Ginn properties." FAC ¶ 317. Not only does this allegation lack the specificity required of a predicate act, it is not altogether clear from this allegation - as is the case with many others in the FAC - that Wachovia engaged in any misconduct. "Bankers do not become racketeers by acting like bankers." Super Vision Int'l v. Mega Int'l Commercial Bank Co., Ltd., 534 F.Supp.2d 1326, 1338 (S.D. Fla. 2008)(quotation omitted).

substantive RICO claim (Count I) is based.[24]  Without the requisite predicate acts, Plaintiffs' RICO conspiracy claim (Count II) would fail as unsupported by evidence of an agreement to commit an underlying substantive RICO violation.  See Jackson, 372 F.3d at 1269 (holding that where a complaint fails to state a substantive RICO claim, a RICO conspiracy count "adds nothing" where it "simply concludes that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation.")[25]  In repleading, Plaintiffs should be careful to separate the defendants, and properly allege the predicate RICO acts.  Failure to do so will result in dismissal with prejudice of Counts I and II on Rule 9(b) grounds.  See Ambrosia Coal, 482 F.3d at 1317.

### 2. *Proximate Cause*

Even if Plaintiffs were to cure the pleading deficiencies noted above and properly allege a pattern of racketeering activity, the Court has concerns about the Plaintiffs' ability

---

[24]  See, e.g., Glenn v. First Nat. Bank in Grand Junction, 868 F.2d 368, 371 (10th Cir. 1989)(quoting with approval the trial court's order dismissing case, which stated: "Plaintiffs have failed to state the facts that support the elements of their RICO claim within the allegations of their First Claim for Relief. I will not search through the several paragraphs of the plaintiffs' 'Introductory Allegations' and attempt to match the factual assertions with the elements of all subsections of the RICO statute to determine if the complaint states a claim for relief. Neither will I require the defendants to 'piece' together the plaintiffs' complaint.")

[25]  See also United States v. Vaghela, 169 F.3d 729, 732 (11th Cir. 1999)("To be guilty of conspiracy, ... parties must have agreed to commit an act that is itself illegal - parties cannot be found guilty of conspiring to commit an act that is not itself against the law."); Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1199 (11th Cir. 2004)("If the underlying cause of action is not viable, the conspiracy claim must also fail." (internal quotation marks and citation omitted)).

17

to satisfy RICO's proximate cause requirement.[26] Specifically, Plaintiffs purchased property (mostly in Florida) during an unprecedented period of escalating prices and feverish demand. However, like many others who purchased real estate shortly before the housing bubble burst, Plaintiffs apparently lost money on their investments. See, e.g., Stein v. Paradigm Mirasol, LLC, 586 F.3d 849, 852 (11th Cir. 2009) ("In a market-based economy the price of housing, like other goods, is subject to swings. There was a sharp upward swing in housing prices between late 2000 and the end of 2005, and the resulting bubble was bigger in Florida than it was in most other states. . . . All bubbles eventually burst, as this one did. The bigger the bubble, the bigger the pop. The bigger the pop, the bigger the losses.") Plaintiffs are required to make at least an initial demonstration at the pleading stage that their losses directly relate to the Defendants' alleged pattern of racketeering activity as opposed to the downturn of the real estate market. See Williams v. Mohawk Indus., 465 F.3d 1277, 1287 (11th Cir. 2006)(citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458 (2006) for the proposition that "courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO

---

[26] "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 989 (2010)(quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)). The Court notes that Plaintiffs' FDUTPA count (Count III) requires a similar showing. A consumer claim for violation of FDUTPA contains the following elements, which must be pled with particularity pursuant to Rule 9(b): "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006). Failure to state facts which indicate how the alleged deceptive acts or unfair practices caused damage to Plaintiffs can result in dismissal of Plaintiffs' FDUTPA claim. See Kais v. Mansiana Ocean Residences, LLC, 2009 WL 825763 at *2 (S.D. Fla. 2009).

violations.")

## IV.    CONCLUSION

By this Order, the Court does not mean to imply that Plaintiffs will not be able to plead a viable complaint. Nor is the Court unsympathetic to the Plaintiffs' position that they should be given some leeway because they cannot learn the complex inner workings of the Ginn entities without discovery.[27] But the FAC is deficient and must be repleaded. Plaintiffs should consider whether certain parties and counts should be eliminated. The Court also strongly suggests that the factual allegations be fewer, focusing on those that are evidence of fraud, and that efforts be made to target specific allegations at specific defendants so that the Court will be in a better position to evaluate the claim against each individual defendant even if within the context of Plaintiffs' theory of an overarching conspiracy. In the end, the Second Amended Complaint must do a better job of concisely identifying who did wrong, what specific actions they took that were wrong and how the Plaintiffs were proximately and adversely affected by these actions.[28]

---

[27]    In repleading, Plaintiffs should consider choosing a single Ginn entity against which to allege the conduct it ascribes to the "Ginn" whole. If this is impracticable, Plaintiffs should make a concerted effort to more clearly identify the precise entity whenever possible. At the very least, any definitions of grouped defendants should be internally consistent. See supra, n.3.

[28]    Because the Court will dismiss the FAC with leave to amend, there is no need to address the validity of Plaintiffs' claims against defendants Ginn Title or ESI (each of which contend that they are improperly named as defendants) at this time. Additionally, as ESI's Motion for Summary Judgment (Doc. 109) contains the same issues raised by its Motion to Dismiss (Doc. 86), the Court will deny the Motion for Summary Judgment without prejudice to refiling at the appropriate stage of litigation. Because of the Court's disposition of these motions to dismiss, the Court does not reach other of Defendants' arguments.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 84, 85, 86, 88, 89, 90) are **GRANTED** to the extent described herein.

2. Plaintiffs' First Amended Complaint (Doc. 71) is **DISMISSED WITHOUT PREJUDICE.** Plaintiffs may file their second amended complaint **no later than November 5, 2010.** Defendants' response to the second amended complaint must be filed **no later than December 7, 2010.**

3. Defendant ESI LIVING, LLC's Motion for Summary Judgment (Doc. 109) is **DENIED WITHOUT PREJUDICE**.

4. The Court hereby sets this case for an in person hearing on any pending motions and case scheduling for **January 12, 2011 at 9:30 a.m.** in Courtroom 10D. **No later than January 7, 2011**, the parties shall file a Case Management Report (form attached).

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of September, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

jmm.

Copies:
counsel of record

Attachments:
CMR