**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GORDON LAWRIE, et al,

    Plaintiffs,

v.

GINN DEVELOPMENT COMPANY, LLC, GINN TITLE SERVICES, LLC, LUBERT-ADLER PARTNERS, L.P., FIFTH THIRD BANCORP, FIFTH THIRD BANK, Michigan, WACHOVIA BANK, N.A., and SUNTRUST MORTGAGE, INC.,

    Defendants.

Case No:   3:09-cv-446-J-32JBT

**O R D E R**

Eleven plaintiffs, purchasers of high end residential lots, filed a class action complaint to redress what they claimed to be a wide-ranging scheme involving real estate and mortgage fraud. (Doc. 1). After Defendants moved to dismiss the complaint, (Doc. 35, 59, 60, 61, 62, 63), Plaintiffs filed an amended complaint on behalf of nineteen plaintiffs. (Doc. 71). Defendants filed motions to dismiss the amended complaint. (Doc. 84, 85, 86, 88, 89, 90). The Court granted those motions without prejudice, noting that the first amended complaint was long and confusing, and failed to demonstrate how any particular Plaintiff was directly affected by Defendants' allegedly wrongful activities. (Doc. 139 at 9-10).

Plaintiffs then filed a second amended complaint, (Doc. 141), which Defendants moved to dismiss, (Doc. 149, 150, 151, 152, 153, 154, 155). The Court adopted the

Report and Recommendation of the assigned United States Magistrate Judge (who conducted a hearing on the motions), and dismissed the second amended complaint. (Doc. 268). Amongst many other problems, the second amended complaint purported to bring a claim for forty-two different property transactions, but only discussed five of those transactions. (Doc. 268 at 3). When combined with Plaintiffs' failure to allege that any Plaintiff paid a higher price in purchasing a property because of any particular false statement, the Court found the second amended complaint deficient. (Doc. 268 at 3). Over objection, the Court gave Plaintiffs the opportunity to file a third amended complaint but warned that failure to state a viable claim would result in dismissal with prejudice. (Doc. 268 at 7).

Plaintiffs filed their third amended complaint ("TAC") (Doc. 272), which Defendants moved to dismiss, (Doc. 275, 276, 277, 278, 279). The Magistrate Judge issued a comprehensive, thirty-seven page Report and Recommendation recommending dismissal of the TAC with prejudice. (Doc. 289). Plaintiffs objected to the Report and Recommendation, (Doc. 294), and Defendants responded to Plaintiffs' objections, (Doc. 299, 300, 301, 302, 303). The case is now before the undersigned for consideration of the Report and Recommendation and a de novo decision on the motions to dismiss.[1]

Although the Magistrate Judge has done a very thorough job, the undersigned is obligated to take a fresh look at the 142-page TAC. Upon de novo review, the Court

---

[1] Any part of a magistrate judge's disposition that has been properly objected to must be reviewed de novo. FED. R. CIV. P. 72(b)(3).

agrees with the Magistrate Judge that Plaintiffs' complaint is due to be dismissed for violations of Federal Rules of Civil Procedure 8 and 9 and because it fails to demonstrate how Defendants' alleged misconduct caused Plaintiffs' losses. Thus, the Court adopts and incorporates the Report and Recommendation's findings and reasoning on these points and adds the following commentary.

Plaintiffs have brought claims on behalf of all persons or entities that purchased real estate in "Ginn developments" during an unspecified period. (Doc. 272 at 105). Named Plaintiffs are purchasers of lots in five different Ginn developments in Florida and North Carolina who assert that they paid more than fair market value for those lots, which they would not have done had they known the lots' true market value. (Doc. 272 at 124-25). The Report and Recommendation summarizes the TAC as follows:

> [L]ike the [First Amended Complaint], '[t]he sheer length and confusing structure of the [TAC] makes it difficult to parse.' This is a serious defect that has never been cured. . . . Plaintiffs allege that from approximately 2002 to 2006, the thirteen named Plaintiffs purchased properties in at least five residential communities located in at least two different states (Florida and North Carolina), which were 'developed by the Ginn and Lubert-Adler Defendants at prices that were fraudulently inflated.' The scheme allegedly 'involved every step of the real estate purchase process,' . . . . The named Plaintiffs purport to bring this action 'on their own behalf and . . . on behalf of a Class of all persons or entities that purchased real estate in Ginn developments, including but not limited to [the Named Developments],' apparently from 1998 through 'the present date' (the alleged time frame for the fraudulent scheme), 'or such time as will be established after a thorough review of Defendants' records.'

(Doc. 289 at 4-6 (internal footnotes and citations omitted)). As the Report and Recommendation describes Plaintiffs' claims and the requisite legal standards in detail, the Court will not duplicate that work here.

Plaintiffs assert that they have adequately responded to the Court's request for more detailed allegations. They therefore object to the Report and Recommendation because, among other reasons, they believe it advocates for dismissal of the TAC for excessive length. (Doc. 294 at 4). The problem with the TAC, however, is not just its length, but its lack of focus and clarity and inability to connect the alleged actions of Defendants to any losses allegedly suffered by Plaintiffs.

In dismissing the second amended complaint, the Court instructed Plaintiffs that they needed to demonstrate how Plaintiffs paid a higher price because of specific actions of Defendants. (Doc. 268 at 3). Instead, Plaintiffs have continued to bring generalized (though serious) allegations of wrongdoing against Defendants, without tying those allegations to Plaintiffs' purchases. For example, Plaintiffs spend twenty-four pages discussing a loan Defendants' procured from Credit Suisse. (Doc. 272 at 62-85). Yet, Plaintiffs assert that their damages were the result of paying more than the fair market value of the properties at the time of purchase, (Doc. 272 at 124-25), transactions that, for all but one of the named Plaintiffs, occurred well before the Credit Suisse deal, (Doc. 272 at 18-39). As such, the Credit Suisse deal cannot have caused Plaintiffs' damages as alleged.

Plaintiffs make a number of other allegations of misconduct, from misrepresentations Defendants made in e-mails to non-Plaintiffs, (Doc. 272 at 45), to the use of deceptive sales tactics, (Doc. 272 at 44-45), to the recording of false information to be used in creating appraisals, (Doc. 272 at 45, 49-51), without ever explaining how, if at all, these actions relate to Plaintiffs' purchases. These allegations

of misconduct that are seemingly unconnected to Plaintiffs' harm violates Rule 8's requirement that Plaintiffs make a short, plain statement showing that they are entitled to relief.

While the TAC describes Plaintiffs' purchases of thirty lots, Plaintiffs fail to tie any of Defendants' misconduct to the particular lot sales. In most cases, the only connection Plaintiffs draw between the allegations of misconduct and Plaintiffs' purchases is that a bank employee[2] suggested to a specific Plaintiff that the property was being sold for its market value or that the appraised value would support the mortgage. (Doc. 272 at 20, 26, 27, 28, 29, 32, 33, 38). Under Rule 9, however, fraud-based claims require plaintiffs to state the time and place of alleged misrepresentations. Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). Plaintiffs have failed to provide any specifics of any of the alleged misrepresentations by bank employees.

Nor have Plaintiffs provided any other specific, well-pleaded allegation tying Defendants' wrongful conduct to Plaintiffs' purchases. Indeed, in the whole 142 pages of the complaint and 85 pages of exhibits attached thereto, at best, Plaintiffs only mention misconduct with respect to five of the thirty lot purchases.[3]

---

[2] The person responsible for the misstatement is named with respect to some purchases, (See Doc. 272 at 20), but is unnamed with respect to others, (See Doc. 272 at 28), in violation of Rule 9.

[3] Specifically, Plaintiffs assert that banks improperly conducted appraisals with respect to Miller's purchase of 110 Bella Colina, (Doc. 272 at 52, 99-100), the Billingtons' purchase of 134 Bella Collina, (Doc. 272 at 55), the Friezes' purchase of 227 Reunion, (Doc. 272 at 55, 93), the Friezes' purchase of 391 Bella Collina, (Doc. 272 at 54), and Gordon Lawrie and Charles McKinlay's purchase of 390 Bella Collina, (Doc.

In the absence of allegations connecting Plaintiffs' purchases to Defendants' wrongdoing, Plaintiffs' complaint fails to adequately allege causation. This failing, as well as Plaintiffs' inter-related violations of Rules 8 and 9, dooms the TAC. As Plaintiffs' claims are therefore due to be dismissed regardless, and because Plaintiffs disclaim any reliance on a fraud-on-the-market theory, the Court need not address the availability of such a theory in this context. Nor does the Court reach the issue of whether an inflated purchase price theory is appropriate in this context, since, even if it were, Plaintiffs have failed to allege how Defendants' behavior caused them to pay an inflated purchase price.[4]

Because the Court recognizes the complexity of the matter and the obvious belief by these Plaintiffs that they have been harmed, the Court has afforded Plaintiffs multiple opportunities to plead a viable complaint. However, on its fourth try, Plaintiffs' TAC suffers from the same deficiencies as the other three complaints. It does not do a good enough "job of concisely identifying who did wrong, what specific actions they took that were wrong and how the Plaintiffs were proximately and adversely affected by these actions." (Doc. 139 at 19). By maintaining this suit as a RICO class action on behalf of "thousands" of lot purchasers, (Doc. 272 at 105), over many developments and a number of states and alleging a scheme that "involved every step of the real estate purchase process", (Doc. 272 at 2), the TAC is at once too broad

---

272 at 54).

[4] Because this Order is strictly limited to this case as pleaded in the TAC, the Court does not view it as precedential for any of the other "Ginn cases" currently pending in this Court.

and yet not specific enough. The TAC violates Rules 8 and 9 and fails to adequately demonstrate causation and must be dismissed. Because this is Plaintiffs' fourth complaint and because the Court has previously given Plaintiffs every opportunity to allege a viable complaint, this time, that dismissal must be with prejudice.[5]

Accordingly, it is hereby

**ORDERED:**

1. The Report and Recommendation, (Doc. 289), of the United States Magistrate Judge is **ADOPTED** and incorporated herein to the extent discussed above.

2. Defendants' Motions to Dismiss, (Doc. 275, 276, 277, 278, 279), are **GRANTED**.

3. This case is dismissed with prejudice. The Clerk should close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 19th day of September, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies with the Report and Recommendation (Doc. 289) attached to:

Counsel of record

---

[5] Plaintiffs alternatively suggest that the Court permit them to "restate the claims on an individualized basis if they so choose," (Doc. 294 at 21), but it is too late for that. Given the Court's previous admonitions, if Plaintiffs truly wanted to restate their claims on an individualized basis, they would have done so by now.

Honorable Joel B. Toomey
United States Magistrate Judge